**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: ACTOS PRODUCTS LIABILITY LITIGATION | MDL No. 6:11-md-2299 |
| ROGER CASTEEL, ET AL, | JUDGE DOHERTY |
| Plaintiffs, | MAGISTRATE JUDGE HANNA |
| v. | Civil Action No.: _____ |
| TAKEDA PHARMACEUTICALS USA, Inc. (fka TAKEDA PHARMACEUTICALS NORTH AMERICA, Inc.), TAKEDA DEVELOPMENT CENTER AMERICAS, INC. (fka TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER, Inc.), TAKEDA PHARMACEUTICALS AMERICA, Inc., TAKEDA CALIFORNIA, Inc. (fka TAKEDA SAN DIEGO, Inc.), TAKEDA PHARMACEUTICALS INTERNATIONAL, Inc., TAKEDA PHARMACEUTICAL COMPANY LIMITED, and ELI LILLY & COMPANY, | BUNDLED COMPLAINT |
| Defendants. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Roger Casteel, David Corbett, Richard Foreman and Judith Harris, Gail and Lawrence Kaplan, Teresita Perez, Individually, as the Administrator of the Estate of Luis Perez, Sr. (hereinafter "Plaintiffs"), hereby bring this cause of action against Defendants Takeda Pharmaceuticals America, Inc. ("Takeda America"), Takeda Pharmaceuticals U.S.A., Inc. (formerly known as Takeda Pharmaceuticals North America, Inc.) (hereinafter "Takeda U.S.A."), Takeda Development Center Americas, Inc. (formerly known as Takeda Global Research & Development Center, Inc.) (hereinafter Takeda Development Center), Takeda

1

Pharmaceutical Company Limited ("Takeda Limited"), Takeda Pharmaceuticals International, Inc. ("Takeda International"), Takeda California, Inc. (formerly known as Takeda San Diego, Inc.) (hereinafter "Takeda California"), and Eli Lilly and Company (all defendants collectively referred to as "Defendants") and as for their Complaint allege, upon information and belief and based on the investigation to date of counsel, as follows:

## SUBJECT MATTER JURISDICTION AND VENUE GENERALLY

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiffs exceeds $75,000.00, exclusive of interest and costs, and because complete diversity exists between the parties, as set forth below, Plaintiffs are citizens of states that are different from the states where the Defendants are incorporated and have their principal place of business.

2.      This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper within this District pursuant to 28 U.S.C. § 1391 because it is a judicial district where Defendants are subject to personal jurisdiction in accordance with 28 U.S.C. § 1391, and is subject to Multi-District Litigation proceedings within this District as part of MDL No. 6:11-md-2299 as directed by this Court's First General Order dated January 23, 2012.

4.      Direct Filing and "Bundling" of causes of action in this Court is proper pursuant to this Court's First Amended Case Management Order on Direct Filing and Service of Process, dated April 12, 2012 and subsequent Second Amended Case Management Order on Direct Filing and Service of Process, dated July 27, 2012.

5.

## PLAINTIFF SPECIFIC ALLEGATIONS

4.1     Roger Casteel alleges as follows:

    a.   Plaintiff is a citizen of Michigan.

    b.   Plaintiff Roger Casteel ingested Actos from approximately March 2011 to January 2012.

    c.   Following and as a legal and proximate result of Actos use, Plaintiff Roger Casteel suffered bladder cancer.

4.2     David Corbett alleges as follows:

    a.   Plaintiff is a citizen of Florida.

    b.   Plaintiff David Corbett ingested Actos from approximately September 2009 to August 2013.

    c.   Following and as a legal and proximate result of Actos use, Plaintiff David Corbett suffered bladder cancer.

4.3     Richard Foreman and Judith Harris allege as follows:

    a.   Plaintiffs are citizens of Florida.

    b.   Plaintiff Richard Foreman ingested Actos from approximately June 2008 to April 2015.

    c.   Following and as a legal and proximate result of Actos use, Plaintiff Richard Foreman suffered bladder cancer.

    d.   Plaintiff Judith Harris' loss of consortium claims are alleged in the tenth cause of action.

4.4 Gail Kaplan and Lawrence Kaplan allege as follows:

    a.   Plaintiffs are citizens of Florida.

    b.   Plaintiff Lawrence Kaplan ingested Actos from approximately 2004 to 2013.

    c.   Following and as a legal and proximate result of Actos use, Plaintiff Lawrence Kaplan suffered bladder cancer.

       d.  Plaintiff Gail Kaplan's loss of consortium claims are alleged in the tenth cause of action.

4.5    Plaintiff Teresita Perez, Individually, as the Administrator of the Estate of Luis Perez, Sr.; and all those entitled to recover for damages for the wrongful death of Luis Perez, Sr, including, Teresita Perez, Luis Perez, Jr., and Angel Perez ("Plaintiffs"), allege as follows:

       a.  Decedent Luis Perez, Sr. (hereinafter "Decedent") was a citizen of Florida.

       b.  Decedent Luis Perez, Sr. left behind his wife, Teresita Perez, and his children, Luis Perez, Jr. and Angel Perez.

       c.  Decedent ingested Actos from approximately 1999 to 2004.

       d.  Following and as a legal and proximate result of Actos use, Decedent suffered bladder cancer and death on August 3, 2004 as a result of taking Actos.

       e.  Plaintiffs' survival and wrongful death claims are alleged in the eleventh cause of action.

## SUMMARY OF THE CASE

5.    Defendants are in the business of researching, designing, developing, licensing, manufacturing, packaging, labeling, marketing, distributing and selling Actos and pioglitazone-containing medicines including Actoplus Met, Actoplus Met XR, and Duetact (all variations hereinafter collectively referred to as "Actos"), which are prescription medicines for the treatment of Type 2 Diabetes.

6.    As a result of Defendants' actions and the defective nature of Actos, Plaintiffs have suffered and may continue to suffer from Bladder Cancer.

7.    Defendants failed to warn Plaintiffs or their prescribing physicians that Actos can cause Bladder Cancer and heart damage.

8.    Defendants have concealed and continue to conceal knowledge of Actos' propensity to cause Bladder Cancer and heart damage from Plaintiffs and their prescribing physicians.

9.    As a foreseeable, direct, and proximate result of Defendants' tortious conduct and the defects present in the Actos product, Plaintiffs were diagnosed with Bladder Cancer and continue to suffer from Bladder Cancer.

10.    Had Plaintiffs been warned that Actos can cause Bladder Cancer, Plaintiffs, individually or through their prescribing physicians, would have chosen safer, alternative medicines which are effective at treating Type 2 Diabetes without an increased risk of serious, deadly adverse events, including Bladder Cancer and heart damage.

11.    Plaintiffs are seeking both compensatory damages for their personal injuries and damages, both general and special, and punitive damages due to Defendants' fraudulent, oppressive, and malicious conduct.

## DEFENDANTS

12.    Upon information and belief, Defendant, TAKEDA PHARMACEUTICALS U.S.A. INC., (f/k/a TAKEDA PHARMACEUTICALS NORTH AMERICA, INC.) is a Delaware corporation, having a principal place of business at One Takeda Parkway, Deerfield, Illinois 60015. As part of its business, TAKEDA PHARMACEUTICALS U.S.A. INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

13.    Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, is a Japanese corporation having a principal place of business at 1-1, Doshomachi 4-chome, Chuoku, Osaka, Japan. As part of its business, TAKEDA PHARMACEUTICAL COMPANY LIMITED

is involved in the research, development, sales, and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

14.    Defendant, TAKEDA PHARMACEUTICALS AMERICA, INC., is a Delaware limited liability company, having a principal place of business at One Takeda Parkway, Deerfield, Illinois 60015. As part of its business, TAKEDA PHARMACEUTICALS AMERICA, INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

15.    Defendant, TAKEDA PHARMACEUTICALS INTERNATIONAL INC., is an Illinois corporation, having a principal place of business at One Takeda Parkway, Deerfield, IL 60015. As part of its business TAKEDA PHARMACEUTICALS INTERNATIONAL INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

16.    Defendant, TAKEDA DEVELOPMENT CENTER AMERICAS, INC. (f/k/a TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER INC.), is an Illinois corporation, having a principal place of business at One Takeda Parkway, Deerfield, IL 60015. As part of its business TAKEDA DEVELOPMENT CENTER AMERICAS, INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

17.    Defendant, TAKEDA CALIFORNIA INC., (f/k/a TAKEDA SAN DIEGO INC.) is a California corporation, having a principal place of business at 10410 Science Center Drive, San Diego, CA 92121. As part of its business TAKEDA CALIFORNIA INC. is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

18.    Defendant ELI LILLY AND COMPANY is an Indiana corporation, having a principal place of business at Lilly Corporate Center, Indianapolis, Indiana 46285. As part of its business ELI LILLY AND COMPANY is involved in the research, development, sales and marketing of pharmaceutical products including Actos and pioglitazone hydrochloride.

19.    Upon information and belief, at relevant times, Defendants were engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce and into the States of **Florida and Michigan** either directly or indirectly through third parties or related entities, its products, including Actos and pioglitazone hydrochloride.

20.    At relevant times, Defendants conducted regular and sustained business and engaged in substantial commerce and business activity in the States of **Florida and Michigan** which included but was not limited to selling, marketing and distributing its products including Actos and pioglitazone hydrochloride in **Florida and Michigan.**

21.    Upon information and belief, at all relevant times, Defendants expected or should have expected that their acts would have consequences within the United States of America including the States of **Florida and Michigan** and Defendants derived and derive substantial revenue from interstate commerce.

22.    Upon information and belief, Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, is a company domiciled in Japan and is the parent/holding company of Defendants, TAKEDA PHARMACEUTICALS INTERNATIONAL INC., TAKEDA PHARMACEUTICALS U.S.A. INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., and TAKEDA CALIFORNIA INC.

23.    Upon information and belief, at all relevant times, Defendant, TAKEDA

PHARMACEUTICAL COMPANY LIMITED, exercised and exercises dominion and control over Defendants, TAKEDA PHARMACEUTICALS INTERNATIONAL INC., TAKEDA PHARMACEUTICALS U.S.A. INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA DEVELOPMENT CENTER AMERICAS, INC., and TAKEDA CALIFORNIA INC..

24.    Upon information and belief, at all relevant times, Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, expected or should have expected that its acts would have consequences within the United States of America and the States of **Florida and Michigan** derived and derive substantial revenue from interstate commerce.

25.    Upon information and belief, at all relevant times, Defendants, including Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, have transacted and conducted business in the States of **Florida and Michigan** and/or contracted to supply goods and services within the States of **Florida and Michigan**, and these causes of action have arisen from same.

26.    Upon information and belief, at all relevant times, Defendants, including Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, committed a tortious act within the States of **Florida and Michigan,** causing injury within the States of **Florida and Michigan** out of which act(s) these causes of action arise.

27.    Upon information and belief, at all relevant times, Defendants, including Defendant, TAKEDA PHARMACEUTICAL COMPANY LIMITED, committed tortious act(s) within the States of **Florida and Michigan,** out of which act(s) these causes of action arise.

28.    Upon information and belief, at all relevant times, Defendant ELI LILLY AND COMPANY expected or should have expected that its acts would have consequences within the United States of America and the States of **Florida and Michigan** derived and derive substantial

revenue from interstate commerce.

29.     Upon information and belief, at all relevant times, Defendants, including Defendant ELI LILLY AND COMPANY have transacted and conducted business in the States of **Florida and Michigan** and/or contracted to supply goods and services within the States of **Florida and Michigan,** and these causes of action have arisen from same.

30.     Upon information and belief, at all relevant times, Defendants, including Defendant ELI LILLY AND COMPANY committed a tortious act without the States of **Florida and Michigan,** causing injury within the States of **Florida and Michigan,** out of which act(s) these causes of action arise.

31.     Upon information and belief, at all relevant times, Defendants, including Defendant ELI LILLY AND COMPANY committed tortious act(s) within the States of **Florida and Michigan,** out of which act(s) these causes of action arise.

## FACTUAL ALLEGATIONS

32.     Defendants, directly or through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed, promoted and sold Actos, for the treatment of Type 2 Diabetes.

33.     According to the American Diabetes Association, Type 2 Diabetes is the most common form of diabetes. Type 2 Diabetes develops when the body does not produce enough insulin or does not efficiently use the insulin that it does produce. Type 1 Diabetes occurs when the body does not produce any insulin at all. Insulin is necessary for the body to be able to use glucose for energy.

34.    Actos was jointly launched by Takeda North America and Lilly in 1999, and was approved by the Food and Drug Administration ("FDA") in July of 1999 to treat Type 2 Diabetes.

35.    Actos is in a class of insulin-sensitizing diabetes agents known as thiazolidinediones ("TZDs").

36.    Actos exerts its antihyperglycemic effect only in the presence of endogenous insulin. Therefore, Actos is only used to treat Type 2 Diabetes and should not be used to treat Type 1 Diabetes.

37.    Actos is also sold in combination with metformin (Actoplus Met, Actoplus Met XR) and in combination with glimepiride (Duetact).

38.    Prior to applying for and obtaining FDA approval to market Actos, Defendants knew or should have known that Actos could cause heart damage.

39.    Numerous studies have examined the effect of Actos on congestive heart failure and have clearly shown that Actos causes congestive heart failure.  Defendants failed to include information regarding Actos and congestive heart failure in its label until it was forced to do so by the FDA in 2007.  Despite the warning, Defendants have promoted and continued to promote Actos as cardioprotective.

40.    Prior to obtaining marketing authority for Actos, Defendants knew or should have known that Actos could cause Bladder Cancer.

41.    Prior to obtaining marketing authority for Actos, Defendants conducted a two-year carcinogenicity study on male and female rats.  Drug-induced bladder tumors were observed in male rats receiving doses of Actos that produced blood drug levels equivalent to those resulting from a clinical dose.

42.     In 2005, the results of the PROactive (PROspective PioglitAzone Clinical Trial In MacroVascular Events) three-year study were published.  PROactive prospectively looked at the impact of Actos use in total mortality and macrovascular morbidity in high risk patients. Dormandy J.A., et al., *Secondary Prevention of Macrovascular Events in Patients with Type 2 Diabetes in the PROactive Study (PROspective PioglitAzone Clinical Trial In MacroVascular Events): a Randomised Controlled Trial*, Lancet, 266:1279-1286 (2005) ("Dormandy paper").

43.     The PROactive study was designed to evaluate cardiovascular events and outcomes.  However, the study demonstrated a higher percentage of Bladder Cancer cases in patients receiving Actos versus comparators.

44.     During the course of monitoring the study, the researchers and Defendants became aware that there were a statistically significant demonstrated higher percentage of Bladder Cancer cases in patients receiving Actos versus comparators.

45.     Neither during the study, nor in the actual final Dormandy paper, did the researchers or Defendants publish these statistically significant increases of Bladder Cancer. Rather, Defendants and researchers intentionally skewed the study findings to obscure the statistical significance of the Bladder Cancer diagnoses.

46.     Defendants willfully, wantonly, fraudulently, and with oppression and malice, withheld the knowledge of the increased risk of Bladder Cancer in users of Actos seen in the PROactive study.

47.     A three-year liver safety study also demonstrated a higher percentage of Bladder Cancer cases in patients receiving Actos versus comparators.

48.     On April 20, 2006, Takeda Limited announced the conclusion of its collaboration in the United States between Takeda North America and Eli Lilly to promote and market Actos,

a partnership Takeda Limited described as a "great success" and "mutually beneficial to both companies."

49.    On September 17, 2010, the FDA issued a Safety Announcement stating it was undertaking a review of the data from an ongoing, ten-year epidemiological study being conducted by Kaiser Permanente to evaluate the association between Actos and Bladder Cancer. The planned five-year interim analysis demonstrated that the risk of Bladder Cancer increases with increasing dose and duration of Actos use.

50.    Despite the FDA finding that Actos is linked to a statistically significant increase in risk for developing Bladder Cancer, Robert Spanheimer, Vice President of Medical and Scientific Affairs for Takeda Limited, claimed to Reuters that the Kaiser Permanente study does not show that Actos users are at an increased risk of Bladder Cancer or other cancers.

51.    In early 2011, the American Diabetes Association published Piccinni, et al., *Assessing the Association of Pioglitazone Use and Bladder Cancer Through Drug Adverse Event Reporting*, Diabetes Care, 34:1369-1371 (June 2011), published ahead of print April 22, 2011. This study analyzed adverse events reports made to the FDA between 2004 and 2009. The conclusion of the study was that "[i]n agreement with preclinical and clinical studies, AERS analysis is consistent with an association between pioglitazone and Bladder Cancer. This issue needs constant epidemiologic surveillance and urgent definition by more specific studies."

52.    On June 9, 2011, the European Medicines Agency announced that it had been informed by the French Medicines Agency of its decision to suspend the use of pioglitazone-containing medicines (Actos, Competact) in France while awaiting the outcome of an ongoing European review.

53.    France's decision was based upon a retrospective cohort study in France using the French National Health Insurance Plan which demonstrated a statistically significant increase in the risk for Bladder Cancer in males exposed to Actos for more than one year. The French cohort included 1.5 million patients with diabetes that were followed for four years (2006-2009).

54.    On June 10, 2011, Reuters published that Germany had joined France in suspending the use of Actos after Germany's Federal Institute for Drugs and Medical Devices reviewed the results of the French study and recommended that doctors not put new patients on pioglitazone.

55.    On June 15, 2011, the FDA issued a Safety Announcement stating that "use of the diabetes medication Actos (Pioglitazone) for more than one year may be associated with an increased risk of Bladder Cancer." The FDA ordered information about this risk to be added to the Warnings and Precautions section of the label for pioglitazone-containing medicines. The FDA further recommended that healthcare physicians discontinue use in patients with active Bladder Cancer.

56.    On June 17, 2011, Health Canada Press Release indicated that in light of studies suggesting an increased risk of Bladder Cancer with the diabetes drug pioglitazone, as well as actions taken by other regulatory agencies, Health Canada informed healthcare professionals and Canadians that it was undertaking a review of the drug's status.

57.    On July 12, 2011, Takeda Limited issued a recall of Actos in France.

58.    As the manufacturers of Actos, Defendants knew or should have known that Actos usage was associated with an increased risk of Bladder Cancer as well as heart damage.

59.    Despite their knowledge prior to and after obtaining marketing authority that Actos use was associated with an increased risk of Bladder Cancer and heart damage,

Defendants failed to warn consumers, including Plaintiffs herein, and prescribing physicians of the true and significant risk of Bladder Cancer and promoted Actos as cardioprotective when in fact Actos causes heart damage.

60.     Despite their knowledge of the results of medical studies and analyses which found statistically significant elevations in the incidences of Bladder Cancer in individuals exposed to Actos therapy, Defendants refused to warn consumers, including Plaintiffs and Plaintiffs' prescribing physicians, and the general public of the true and significant risk of Bladder Cancer associated with Actos therapy.  Instead, Defendants promoted Actos as a safe and effective treatment for Type 2 Diabetes.

61.     Despite their knowledge of the results of medical studies and analyses which showed that Actos causes heart damage, Defendants refused to warn consumers, including Plaintiffs, prescribing physicians, including Plaintiffs' prescribing physicians, and the general public of the true and significant risk of heart damage associated with Actos therapy.  Instead, Defendants promoted Actos as cardioprotective.

62.     By failing to warn that Actos was and is associated with a true and significant increased risk of Bladder Cancer and heart damage, Defendants' marketing efforts succeeded in making Actos the top-selling pharmaceutical for Defendants.  In 2008, Actos was the tenth best-selling medication in the United States.

63.     Defendants, through their affirmative misrepresentations and omissions, have actively concealed and continue to conceal from consumers, including Plaintiffs, and prescribing physicians, including Plaintiffs' prescribing physicians, the true and significant risk of injuries caused by Actos exposure.

64.    Defendants have yet to adequately warn consumers and the prescribing medical community about the true and significant risks of Bladder Cancer associated with Actos use.

65.    Defendants continue to promote Actos as cardioprotective despite knowing that Actos causes heart damage.

66.    As a result of the defective nature of Actos, persons who were prescribed and ingested Actos, including Plaintiffs, were exposed to an increased risk for developing Bladder Cancer and heart damage, have been diagnosed with Bladder Cancer and/or heart damages, and fear the recurrence of their injuries.

67.    Had Plaintiffs, individually or through their prescribing physicians, known that Actos presented a significant risk of Bladder Cancer, Plaintiffs would have chosen a safer alternative medicine to treat their diabetes.

68.    Numerous, alternative, safer products are available to treat Type 2 Diabetes.

69.    Without accurate and complete information regarding Actos' serious side effects and lack of benefits, Plaintiffs, individually or through their prescribing physicians, were not able to perform a risk/benefit analysis regarding Actos treatment versus other available diabetes treatments.

70.    Plaintiffs would not have used Actos had Defendants properly disclosed the risks associated with its use.

71.    As a direct result of the defective nature of Actos, Plaintiffs have been permanently and severely injured, having suffered serious consequences from Actos use. Plaintiffs require and will in the future require ongoing medical care and treatment.

72.    As a direct and proximate result of Defendants' tortious conduct and the unreasonably dangerous and defective characteristics of Actos, Plaintiffs suffered severe and

permanent physical injuries, including Bladder Cancer.  Plaintiffs have endured and continue to endure substantial pain and suffering.  Plaintiffs have incurred expenses for medical care and treatment, and will continue to incur such expenses in the future.  Plaintiffs have suffered and will continue to suffer economic loss.  Plaintiffs have suffered and continue to suffer emotional distress associated with the diagnosis of cancer and resulting from the fear of the recurrence of the cancer, malignancies, and future treatment options, including removal of the urinary bladder. Plaintiffs seek damages in excess of $75,000.00, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deems proper.

## EQUITABLE TOLLING OF APPLICABLE STATUES OF LIMITATIONS

73.    The running of any statute of limitations has been tolled by reason of Defendants' conduct.  Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Plaintiffs' prescribing physicians the true risks associated with Actos and pioglitazone hydrochloride.

74.    As a result of Defendants' actions, Plaintiffs and Plaintiffs' prescribing physicians were unaware, and could not reasonably know or have learned through reasonable diligence that Plaintiffs had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

75.    Furthermore, Defendants are estopped from relying on any statute of limitations because of their concealment of the truth, quality and nature of Actos and pioglitazone hydrochloride.  Defendants were under a duty to disclose the true character, quality and nature of Actos because this was non-public information which the Defendants had and continue to have exclusive control, and because the Defendants knew that this information was not available to Plaintiffs, their medical providers and/or to their health facilities.

16

76.    Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonable known risks.  Plaintiffs and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity or related health risks, and were forced to rely on Defendants' representations.

**FIRST CAUSE OF ACTION**
**(NEGLIGENCE)**

77.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

78.    Defendants had a duty to Plaintiffs to exercise reasonable care in designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of Actos and pioglitazone hydrochloride into the stream of commerce, including a duty to assure that Actos and pioglitazone hydrochloride would not cause users to suffer unreasonable, dangerous side effects such as cancer.

79.    Defendants failed to exercise reasonable care and/or were reckless in designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Actos into interstate commerce in that Defendants knew or should have known that using Actos caused a risk of unreasonable, dangerous side effects, including bladder cancer.

80.    Despite the fact that Defendants knew or should have known that Actos was associated with and/or caused bladder cancer, Defendants continued to market, manufacture, distribute and/or sell Actos to consumers, including Plaintiffs.

81.    Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care.

82.     Defendants' negligence and/or recklessness was the proximate cause of Plaintiffs' injuries.

83.     As a result of Defendants' negligence and/or recklessness, Plaintiffs suffered and will continue to suffer serious and dangerous side effects including bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs' bladder cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above.

84.     By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000.00 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deem proper.

## SECOND CAUSE OF ACTION
## (STRICT PRODUCTS LIABILITY – FAILURE TO WARN)

85.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

86.     Defendants researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, marketed, and/or introduced Actos into the stream of commerce, and in the course of the same, directly advertised or marketed Actos and pioglitazone hydrochloride to consumers or persons responsible for consumers, and therefore, had a duty to both Plaintiffs directly and to their physician to warn of risks associated with the use of the Product.

87.     Defendants had a duty to warn of adverse drug reactions, which they know or have reason to know can be caused by the use of Actos and pioglitazone hydrochloride and/or are associated with the use of Actos and pioglitazone hydrochloride.

88.     The Actos and pioglitazone hydrochloride manufactured and/or supplied by the Defendants was defective due to inadequate post-marketing warnings and/or instructions because, after the Defendants knew or should have known of the risks of bladder cancer from Actos use, they failed to provide adequate warnings to consumer of the product regarding bladder cancer risks, including Plaintiffs and their physicians, and continued to aggressively promote Actos.

89.     Due to the inadequate warning regarding bladder cancer, Actos was in a defective condition and unreasonably dangerous at the time that it left the control of the Defendants.

90.     Defendants further failed to adequately warn Plaintiffs and their prescribing physicians of human and animal results in studies pertaining to bladder cancer and Actos.

91.     Had Plaintiffs been adequately warned of the potential life-threatening side effects of Actos, they would not have purchased or taken Actos and could have chosen to request other treatments or prescription medications.

92.     Upon information and belief, had Plaintiffs' prescribing physicians been adequately warned of the potential life-threatening side effects of Actos, their prescribing physicians would have discussed the risks of bladder cancer and Actos with Plaintiffs and/or would not have prescribed it.

93.     By reason of the Actos' warning defects and Defendants' aforementioned failure to warn, Plaintiffs suffered and will continue to suffer serious and dangerous side effects including bladder cancer, as well as other severe and personal injuries which are permanent and

lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs' bladder cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above.

94.    By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000.00 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deem proper.

**THIRD CAUSE OF ACTION**
**(STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN)**

95.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

96.    Actos was expected to, and did, reach the intended consumers, handlers, and persons coming into contact with the product without substantial change in the condition in which it was produced, manufactured, sold, distributed, labeled, and marketed by Defendants.

97.    At all times relevant, Actos was manufactured, designed, and labeled in an unsafe, defective, and unreasonably dangerous condition, which was dangerous for use by the public, and, in particular, by Plaintiffs.

98.    Actos and pioglitazone hydrochloride as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendants was defective in design and formulation in that when it left the hands of the manufacturers and/or suppliers.  Actos was sold in a defective condition, as it was unreasonably dangerous due to the risk of bladder cancer posed by the drug.  Such foreseeable risks were beyond that which would

be contemplated by the ordinary consumer and exceeded the alleged benefits associated with the design and formulation of Actos.

99.    Actos and pioglitazone hydrochloride as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed by Defendants was defective in design and formulation in that when it left the hands of the Defendants' manufacturers and/or suppliers it was unreasonably dangerous and was also more dangerous to an extent beyond that which the ordinary consumer would expect.

100.    At all times herein mentioned, Actos and pioglitazone hydrochloride was in a defective condition and was unsafe, and Defendants knew and had reason to know that the product was defective and unreasonably dangerous, especially when Actos was used in a form and manner instructed and provided by the Defendants.

101.    Defendants had a duty to create a product that was not unreasonably dangerous for its normal, common, intended use.

102.    At the time of Plaintiffs' use of Actos, it was being used for its intended purpose, and in a manner normally intended, namely for the treatment of Type 2 Diabetes Mellitus.

103.    Defendants researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed a defective product that caused an unreasonable risk to the health of consumers and to Plaintiffs in particular, and Defendants are therefore strictly liable for the injuries and damages sustained by Plaintiffs.

104.    At the time Defendants' product left their control, there was a practical, technically feasible, and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Actos.  This was

demonstrated by the existence of other Type 2 Diabetes Mellitus medications which had a more established safety profile and a considerably lower risk profile.

105.     Plaintiffs could not, in the reasonable exercise of care, have discovered Actos' defects and perceived its danger.

106.     The defects in Defendants' product were substantial and contributing factors in causing Plaintiffs' injuries.

107.     Due to Actos' defective design and unreasonably dangerous condition, Plaintiffs suffered and will continue to suffer serious and dangerous side effects including bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs' bladder cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above.

108.     Due to the unreasonably dangerous condition of Actos, Defendants are strictly liable to Plaintiffs.

109.     By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000.00 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deem proper.

## FOURTH CAUSE OF ACTION
## (BREACH OF EXPRESS WARRANTY)

110.     Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

111.    Defendants expressly warranted that Actos was safe for its intended use and as otherwise described in this complaint.  Actos did not conform to these express representations, including, but not limited to, the representation that it was well accepted in patient and animal studies, the representation that it was safe, and the representation that it did not have high and/or unacceptable levels of life-threatening side effects like bladder cancer, that it would improve health, maintain health, and potentially prolong life.

112.    The express warranties represented by the Defendants were a part of the basis for Plaintiffs' use of Actos and he relied on these warranties in deciding to use Actos.

113.    At the time of the making of the express warranties, the Defendants had knowledge of the purpose for which the Actos and pioglitazone hydrochloride was to be used, and warrantied same to be in all respects safe, effective and proper for such purpose.

114.    Actos does not conform to these express representations because Actos is not safe of effective and may produce serious side effects such as bladder cancer, degrading Plaintiffs' health and shrinking their life expectancy.

115.    As a result of the foregoing acts and omissions Plaintiffs suffered and will continue to suffer serious and dangerous side effects including bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs' bladder cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above.

116.    By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000.00

and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deem proper.

## FIFTH CAUSE OF ACTION
### (BREACH OF IMPLIED WARRANTY FOR A PARTICULAR PURPOSE)

117.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

118.    At all times herein mentioned, the Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold Actos and pioglitazone hydrochloride, to Treat 2 Diabetes Mellitus.

119.    The Defendants impliedly represented and warranted to the users of Actos that Actos was safe and fit for the particular purpose for which said product was to be used, namely treating diabetes, improving health, maintaining health, and potentially prolonging life.

120.    These representations warranties aforementioned were false, misleading, and inaccurate in that Actos and pioglitazone hydrochloride were unsafe, degraded Plaintiffs' health and shrinking their life expectancy.

121.    Plaintiffs relied on the implied warranty of fitness for a particular use and purpose.

122.    Plaintiffs reasonably relied upon the skill and judgment of Defendants as to whether Actos was safe and fit for its intended use.

123.    Actos and pioglitazone hydrochloride were injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

124. Defendants breached the aforesaid implied warranty, as their drug Actos was not for its intended purposes and uses.

125. As a result of the foregoing acts and omissions Plaintiffs suffered and will continue to suffer serious and dangerous side effects including bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs' bladder cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above.

126. By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000.00 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deem proper.

**SIXTH CAUSE OF ACTION
(BREACH OF IMPLIED WARRANTY
OF MERCHANTABILITY)**

127. Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

128. Defendants manufactured, compounded, portrayed, disturbed, recommended, merchandized, advertised, promoted and sold Actos and pioglitazone hydrochloride, to treat Type 2 Diabetes Mellitus.

129. Defendants marketed, sold and distributed Actos and knew and promoted the use for which Actos was being used by Plaintiffs and impliedly warranted to them that Actos was of

merchantable quality and fit for the ordinary purpose for which it was intended, namely treating diabetes, improving health, maintaining health, and potentially prolonging life.

130.    These representations and warranties aforementioned were false, misleading, and inaccurate in that Actos and pioglitazone hydrochloride were unsafe, degraded Plaintiffs' health and shortened their life expectancy.

131.    Plaintiffs reasonably relied on the skill, expertise and judgment of the Defendants and its representations as to the fact that Actos was of merchantable quality.

132.    The Actos and pioglitazone hydrochloride manufactured and supplied by the Defendants was not of merchantable quality, as warranted by the Defendants in that the drug had dangerous and life threatening side effects and was thus not fit for the ordinary purpose which it was intended.

133.    As a direct and proximate result of the foregoing, Plaintiffs suffered and will continue to suffer serious and dangerous side effects including bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs' bladder cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above.

134.    By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000.00 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deem proper.

## SEVENTH CAUSE OF ACTION
### (NEGLIGENCE *PER SE*)

135.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

136.    A central premise of the federal regulations governing prescription drugs is that it is the manufacturer who bears the responsibility for the safety of its product including the content of its label at all times.

137.    Defendants have a duty of care, as set forth in the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* which duty is continuing following the approval of the new drug application while the drug remains on the market.

138.    Defendants' culpable conduct alleged herein constitutes an adulteration and/or misbranding as defined by the Federal Food, Drug, and Cosmetic Act, and constitutes a breach of duty.

139.    Plaintiffs, as purchasers and consumers of Actos, were within the class of persons the statutes and regulations are designed to protect, and the injuries alleged are the type of harm the statutes and regulations are designed to prevent.

140.    Regarding their conduct concerning Actos, Defendants failed to meet the standard of care in applicable statutes and regulations intended for the benefit of the Plaintiffs, making Defendants negligent *per se* in that:

   a.    Labeling lacked adequate information on the usage of Actos;

   b.    Labeling failed to provide adequate warnings of severe medical conditions, such as Bladder Cancer;

   c.    There was inadequate patient information for safe and effective use;

   d.    There was inadequate information regarding special care to be exercised by practicing physicians for safe and effective use of Actos; and

e.    Labeling was misleading and promotional.

141.    Defendants' Actos is misbranded pursuant to 21 U.S.C. § 352, including as follows:

a.    The labeling is false, misleading, and/or is health-endangering when used in the dosage, manner, frequency, or duration prescribed or suggested in the labeling;

b.    Words, statements, or other information required by or under authority of 21 U.S.C. § 301, including § 35, are not prominently placed thereon with such conspicuousness and in such terms as to render it likely to be read and understood by the ordinary consumer under customary conditions of purchase and use; and

c.    The labeling does not bear adequate warnings against use when such use may be dangerous to health, including regarding dosage and/or duration.

142.    Defendants have violated 21 U.S.C. § 331, including as follows:

a.    Introduction or delivery, or introduction into interstate commerce, of Actos that is misbranded;

b.    Misbranding of Actos in interstate commerce;

c.    Manufacture of Actos which is misbranded.

143.    Defendants have violated 21 C.F.R. § 201.56, including as follows:

a.    Labeling of Actos was not adequate and proper in that it was not informative and accurate, and did not contain a summary of the essential scientific information needed for the safe and effective use of the drug;

b.    Labeling of Actos was not adequately and properly updated and/or revised, including as authorized via 21 C.F.R. § 314.70, when new information became known to Defendants, so it was inaccurate, false, and/or misleading.

144.    Defendants have violated 21 C.F.R. § 201.57, including as follows:

a.    The labeling failed to provide important information for safe and effective use of Actos, including its potential to cause Bladder Cancer;

b.    Defendants failed to identify testing needed for selection or monitoring of patients who took Actos;

c.      Defendants failed to provide adequate and proper warnings and precautions for Actos, and/or failed to timely and adequately strengthen warnings, including information of serious adverse reactions and potential safety hazards, including the increased risk of developing Bladder Cancer;

d.      Defendants failed to provide adequate and proper Actos post marketing information, including adverse reactions such as development of Bladder Cancer;

e.      Defendants failed to revise the labeling to include warnings as soon as there was reasonable evidence of association of a serious hazard from Actos ingestion, including the development of Bladder Cancer.

145.    Defendants have violated 21 C.F.R. § 310.303, including as follows:

a.      Failure to establish and maintain adequate post-marketing records and render adequate and proper reports related to clinical experience or other data or information necessary for determination of whether there are or may be grounds for suspending or withdrawing FDA approval of Actos;

b.      Failure to acquire necessary data for determining the safety and effectiveness of long-term Actos use.

146.    Defendants have violated 21 C.F.R. §§ 310.305 and 314.80 by failing to adequately and properly maintain records, and failing to report, review, and/or investigate adverse events, including those that are unexpected and/or serious and result in life-threatening experiences, including the development of Bladder Cancer.

147.    The Defendants violated 21 CFR §§310.305 and 314.80 by failing to report adverse events associated with the prescription drug Actos as soon as possible or at least within 15 days of the initial receipt by the Defendants of the adverse drugs experience.

148.    The Defendants violated 21 CFR §§310.305 and 314.80 by failing to conduct an investigation of each adverse event associated with the prescription drug Actos, and evaluating the cause of the adverse event.

149.    The Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to promptly investigate all serious, unexpected adverse drug experiences and submit follow-up reports within the prescribed 15 calendar days of receipt of new information or as requested by the FDA.

150.    The Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to identify the reports they submitted properly, such as by labeling them as "15-day Alert report," or "15-day Alert report followup."

151.    The Defendants violated 21 CFR § 312.32 because they failed to review all information relevant to the safety of the prescription drug Actos or otherwise received by the Defendants from sources, foreign or domestic, including information derived from any clinical or epidemiological investigations, animal investigations, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities that have not already been previously reported to the agency by the sponsor.

152.    The Defendants violated 21 CFR § 314.80 by failing to provide periodic reports to the FDA containing (a) a narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval, (b) an Adverse Reaction Report for each adverse drug experience not already reported under the Post marketing 15-day Alert report, and/or (c) a history of actions taken since the last report because of adverse drug experiences.

153.    The Defendants violated 21 CFR § 314.80 by failing to submit a copy of the published article(s) from scientific or medical journals along with one or more 15-day Alert reports based on information from the scientific literature.

154.    Defendants have violated 21 C.F.R. § 312.32 by failing to adequately and properly review all information relevant to the safety of Actos from any source, foreign or domestic.

155.    As a direct and proximate result of the negligence per se of Defendants, Plaintiffs suffered serious and dangerous side effects including Bladder Cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs' Bladder Cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above.

156.    By reason of the foregoing, Plaintiffs demand judgment against Defendants for damages in a sum in excess of $75,000.00, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deems proper.

## EIGHTH CAUSE OF ACTION
## (FRAUDULENT MISREPRESENTATION AND CONCEALMENT)

157.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

158.    Defendants made material representations and material omissions and/or concealments to Plaintiffs, their prescribing physicians, to the medical and healthcare community at large, and to the general public regarding the safety and/or efficacy of Actos.

159.    Defendants made material representations by using written or verbal communications, advertisements, drug packaging and labeling, and/or statements made by Defendants' agents.  These representations were intended to promote and/or support Actos, including, but not limited to, representations of the following effect:

a.      That Actos is a safe and effective drug for use in Type 2 Diabetics;

b.      That Actos was safer and more effective drug than other Type 2 Diabetes drugs or treatments;

c.      That Actos has significant or superior health benefits, especially as compared to other drugs, including but not limited to, superior lipid profile benefits, superior organ and tissue benefits, superior blood sugar control, and/or significant reduced risk for heart-related adverse events;

d.      That Actos had a favorable safety profile, and had fewer adverse health and side effects than were known or should have been known by Defendants;

e.      That Actos poses no statistically significant risk of cancer to the urinary tract and/or bladder in humans.

160.    Defendants made these material representations, which also included omissions of material fact, to the medical and healthcare community at large, the general public, to Plaintiffs' medical or healthcare provider(s), and/or to Plaintiffs with intent to induce medical and healthcare providers and Type 2 Diabetes patients to dispense, provide, prescribe, accept, purchase, and/or consume the drug for treatment of Type 2 Diabetes.  Specifically, but not exhaustively, Defendants made false material representations and/or material omissions through the course of an aggressive sales and marketing operation that implemented false and misleading statements by sales representatives, Defendant-sponsored literature, and/or Defendant-sponsored promotional functions in order to promote and sell Actos while omitting material facts regarding the drug's dangerous side effects and adverse events, including evidence that Actos was associated with an increased risk of Bladder Cancer.

161.    Defendants knew or should have known that their representations were false or misleading and/or knew that Defendants were concealing and/or omitting material information from the medical and healthcare community at large, the general public, from Plaintiffs' medical or healthcare provider(s), and/or Plaintiffs.

162.    In addition to making false and misleading material representations to the medical and healthcare community at large, the general public, Plaintiffs' medical or healthcare provider(s), and/or Plaintiffs, Defendants also fraudulently concealed and/or intentionally omitted material information, including, but not limited to, the following:

a.    That Actos was not as safe as other Forms of Type 2 Diabetes treatments or drugs;

b.    That the risks of adverse events, including the risk of being diagnosed with Bladder Cancer as a result of ingesting the drug, were higher than those with other forms of Type 2 Diabetes treatments;

c.    That the risks of adverse events, including the risk of being diagnosed with Bladder Cancer as a result of ingesting the drug, were not adequately tested and/or warned of by Defendants;

d.    That Actos was defective, and that it caused dangerous side effects, including being diagnosed with Bladder Cancer as a result of ingesting the drug, in a much higher and more significant rate than other forms of Type 2 Diabetes treatments;

e.    That patients needed to be monitored more regularly for adverse events, including Bladder Cancer, while using;

f.    That Actos was designed negligently;

g.    That Actos lacked sufficient warnings with regard to adverse events, including Bladder Cancer;

h.    That Actos was designed defectively; and

i.    That Actos was designed improperly.

163.    Defendants also actively engaged in concealing and omitting post-market data and evidence known to Defendants while Actos was on the market that indicated that Actos was associated with an increased risk of Bladder Cancer in humans.  Between 1999 and 2011, Defendants were faced with multiple opportunities to inform the medical and healthcare community at large, the general public, Plaintiffs' medical or healthcare provider(s), and/or Plaintiffs of the risks and dangers of Actos, yet Defendants consciously and deliberately withheld, concealed, and omitted such information.  Incidents in which Defendants actively

engaged in concealing and omitting post-market data and evidence include, but are not limited to:

    a.    After the release of Actos onto the market, Defendants were informed that other Type 2 Diabetes drugs, compounds, or formulations in the same or substantially similar class of drugs as Actos were associated with an increased risk of Bladder Cancer, yet Defendants engaged in a course of conduct to actively ignore, separate, and or disassociate Actos from being associated with any drug, compound, or formulation with an increased risk of Bladder Cancer without an adequate scientific or pharmacological basis for such ignorance, separation, or disassociation;

    b.    After the release of Actos onto the market, Defendants possessed facts and evidence that indicated that Actos was associated with an increased risk of Bladder Cancer in humans, and were faced with several opportunities, including suggestions from the Food and Drug Administration (FDA), to revise the packaging and/or labeling of Actos to strengthen its warnings with regard to an increased risk of Bladder Cancer.  Not only did Defendants decline to strengthen Actos' packaging and/or labeling to inform medical and health care providers and consumers, but Defendants engaged in a false and misleading marketing and regulatory plan and/or process to aggressively combat any suggestions by regulatory and/or medical authorities that the Actos label should be revised. Defendants' plan and/or process to combat label changes through false and misleading means was often predicated upon Defendants' concerns regarding the negative sales and marketing ramifications of a label change, as opposed to patient safety;

    c.    After the release of Actos onto the market, Defendants possessed clinical data through studies, including Defendant-sponsored studies, that Actos was associated with a statistically significant increased risk of Bladder Cancer in humans.  After receiving this information, Defendants engaged in false and or misleading conduct and intentionally withheld, suppressed, misrepresented, and/or concealed this data from the medical and healthcare community at large, the general public, Plaintiffs' medical or healthcare provider(s), and/or Plaintiffs.

    d.    Upon hearing any negative news about its competitors such as the GlaxoSmithKline drug Avandia, Defendants conducted aggressive marketing campaigns against such competitors touting the alleged benefits of Actos over its competitor while purposefully and knowingly suppressing information about life-threatening side effects of Actos such as the increased risk of Bladder Cancer.

164.    Defendants had sole access to material facts concerning the defective nature of Actos and its propensity to cause serious and dangerous side effects, including Bladder Cancer, to persons who used Actos, including Plaintiffs.

165.    Defendants' misrepresentations, concealments and omissions of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and to induce Plaintiffs' prescribing physicians to prescribe and/or dispense Actos and to induce Plaintiffs to purchase and consume Actos.

166.    Plaintiffs' medical or healthcare provider(s) and Plaintiffs had no way to determine the truth behind Defendants' false and/or misleading statements, concealments and omissions surrounding Actos, and reasonably relied on false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiffs' prescribing physicians and Plaintiffs had no way to know were omitted.

167.    Plaintiffs' medical or healthcare provider(s) and Plaintiffs justifiably relied on the false and/or misleading statements made by Defendants and relied on Defendants' statements without knowledge of the falsity of the statements and the omissions of material facts contained therein.  Defendants were in a position to disseminate information regarding the efficacy and safety of Actos and Plaintiffs' prescribing physicians and Plaintiffs were, justifiably, placed in a position to receive and rely on this information in considering whether to prescribe and/or consumer Actos.

168.    Plaintiffs' medical or healthcare provider(s) and Plaintiffs justifiably relied upon Defendants' material misrepresentations, including the omissions contained therein, when making the decision to dispense, provide, prescribe, accept, purchase, and/or consume Actos. Defendants, as was intended by their material misrepresentations and omissions, induced Plaintiffs and prescribing physicians to dispense, provide, prescribe, accept, purchase, and/or consume Actos.

169.    As a direct and proximate result of the above-stated false representations and/or omissions as described herein, Plaintiffs suffered serious and dangerous side effects including Bladder Cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs' Bladder Cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above.

170.    By reason of the foregoing, Plaintiffs demand judgment against Defendants for damages in a sum in excess of $75,000.00, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deems proper.

**NINTH CAUSE OF ACTION**
**(STATUTORY STRICT LIABILITY)**
**(FOR PLAINTIFFS FROM JURISDICTIONS WITH**
**STATUTORY-BASED CAUSES OF ACTION)**

171.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

172.    Plaintiffs from jurisdictions that provide a statutory cause of action for strict liability assert these state statute-based causes of action in addition to the above-enumerated causes of action.

173.    By reason of the Actos' defects and Defendants' aforementioned failure to warn, Plaintiffs suffered and will continue to suffer serious and dangerous side effects including bladder cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a risk of future cancer(s), reasonable fear of future cancer, any and all life complications caused by Plaintiffs'

bladder cancer, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above.

174.    By reason of the foregoing, Plaintiffs demand judgment against each Defendant, individually, jointly and severally for compensatory damages in a sum in excess of $75,000.00 and punitive damages, together with interest, costs of suit, attorneys' fees and all such other and further relief as the Court deem proper.

## TENTH CAUSE OF ACTION
## (LOSS OF CONSORTIUM)

175.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

176.    Plaintiffs are legally married, and as such, are entitled to the comfort, enjoyment, society and services of one another.

177.    As a direct and proximate result of the foregoing, Plaintiffs were deprived of the comfort and enjoyment of the services and society of their spouse and have suffered and will continue to suffer economic loss, and have otherwise been emotionally and economically injured.  Plaintiffs' damages are permanent and will continue into the future.

## ELEVENTH CAUSE OF ACTION
## (WRONGFUL DEATH AND SURVIVORSHIP)

178.    Plaintiffs repeat, reiterate and reallege each and every allegation of this Complaint with the same force and effect as if more fully set forth herein.

179.    Decedent suffered fatal injuries due to the Defendants' wrongful conduct as set forth herein.

180.    Plaintiffs bring this action on behalf of themselves, individually, and for the benefit of those entitled to recover for the wrongful death of the Decedent.

181.    Decedent incurred conscious pain and suffering leading up to Decedent's untimely death.

182.    Plaintiffs are also entitled to recover damages to which Decedent was or would have been entitled to if Decedent were living, as Decedent's cause of action did not abate upon death.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against Defendants in excess of $75,000.00, as follows:

1.    Awarding compensatory damages, both general and special damages, to Plaintiffs for past and future damages, including but not limited to, pain and suffering, health care costs, medical monitoring, together with all other interest and costs allowable by law.

2.    Punitive and/or exemplary damages for the wanton, willful, fraudulent, and/or reckless acts of the Defendants who demonstrated malice, reckless indifference, and/or a complete disregard for the safety and welfare of the public and to Plaintiffs, in an amount sufficient to punish Defendants and deter future similar conduct.

3.    Awarding Plaintiffs' attorney's fees.

4.    Awarding Plaintiffs the costs of these proceedings; and

5.    Any such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a trial by jury of all issues triable by jury.

DATED:  June 15, 2015

Respectfully submitted,

By: /s/ Robert E. Price
Robert E. Price
FL Bar No. 085284

Troy A. Rafferty
FL Bar No. 024120
**Levin Papantonio Thomas Mitchell**
**Rafferty & Proctor, P.A.**
316 S. Baylen Street, Ste. 400
Pensacola, FL 32502
(850) 435-7076
Rprice@levinlaw.com
TRafferty@levinlaw.com
*Attorneys for Plaintiffs*